UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| JAMES M. CADORET, | |
|---|---|
| *Plaintiff,* | Civil No. 3:15cv1377 (JBA) |
| v. | |
| SIKORSKY AIRCRAFT CORPORATION, | |
| *Defendant.* | February 9, 2018 |

**RULING DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, James M. Cadoret, alleges against his employer, Defendant Sikorsky Aircraft Corporation ("Sikorsky"), discrimination in violation of Title I of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 1212 *et seq.* (Count One), and Section 504 of the Rehabilitation Act of 1973 (the "Rehab Act"), 29 U.S.C. § 794 (Count Two), based upon Defendant's failure to accommodate his disability by providing an interpreter which would allow him equal access to the privileges and benefits of his employment. Defendant now moves [Doc. # 48] for summary judgment.[1] Oral argument was held on November 21, 2017. For the reasons that follow, Defendant's Motion is denied.

**I. Background**

Defendant manufactures, designs, and services aircraft for military and commercial operators in the United States and internationally. (Def.'s Loc. R. 56(a)1 Stmt. [Doc. # 48-2] and Pl.'s Loc. R. 56(a)2 Stmt. [Doc. # 56] ¶ 1 (together referred to as "LR 56").) Plaintiff is a deaf individual who has been a Sikorsky employee for over thirty years, working as an Electrical Installer

---

[1] Plaintiff's Complaint also alleges a claim of retaliation for asserting his ADA rights, and Defendant's Motion for Summary Judgment seeks dismissal of this claim. Plaintiff has since withdrawn that claim and it is dismissed with prejudice. Therefore, the sole remaining claim is the failure to accommodate claim alleged under both the ADA and Section 504 of Rehab Act.

for most of that time (including currently). (LR 56 ¶¶ 6–7, 14.) His work record, including his spotless review and disciplinary record, is generally not in dispute. (*Id.* ¶¶ 10–17, 19, 21, 23, 57, 58.)

Plaintiff's primary and preferred language is American Sign Language. (Ex. 1 (Pl.'s Depo.) to Pl.'s Opp'n [Doc. # 56-1] at 31:12-13; Ex. 2 (Shepard-Kegl Report) to *id.* [Doc. # 56-2] at 81-82 ("In contrast with his non-native mastery of English, Mr. Cadoret is a natively fluent signer of ASL and is perfectly able to achieve communicative access via an ASL interpreter.").) He reads and writes English at a fourth-to-sixth-grade level. (Shepard-Kegl Report at 81-82.) His ability to communicate via lip-reading varies, depending on context. (Pl.'s Depo. at 30:8-31:11.) For instance, union steward Warren makes sure to face Plaintiff and speak more slowly because "[i]f he's deaf and he's not looking at my face, then he won't be able to read my lips." (Ex. 9 (Warren Depo.) to Pl.'s Opp'n [Doc. # 56-9] at 26:4-27:14.) Similarly, Plaintiff is "a reasonably good lipreader one-on-one in well-lit and quiet settings, but cannot rely upon lipreading in the noisy environment he encounters in his workplace when interacting with peers and the people he was supervising." (Shepard-Kegl Report at 81-82.) Dr. Shepard Kegl concludes that Plaintiff's speech may be difficult to understand, especially for individuals not familiar with deaf speech, and may give the impression that he is less mature than he is in reality. (*Id.*)

Plaintiff's job includes participation in company-wide "All Hands" meetings, departmental meetings, daily "muster" meetings, meetings with supervisors, and various job and safety trainings. (LR 56 ¶¶ 59–61, 65, 100.) His job duties also include communication with co-workers, which was particularly intensive when he was an active working leader of between two and sixteen other installers from approximately 2007 to 2014. (*See* LR 56 ¶ 56; Pl.'s Depo. at 163:12-64:11, 174:8-10; 189:18-90:18.) The daily muster meetings last anywhere from 10 minutes to a half an hour or

longer. (Pl.'s Depo. at 141:11-13, 163:2-7.) At these meetings, "sometimes there are people who ask questions and, [Plaintiff doesn't] know what the answers or the questions are." (*Id.* at 141:19-21.) Plaintiff testified that he "wasn't included in [the daily muster] meeting[s] because, again, no interpreter." (*Id.* at 163:4-5.)

Because of his communication limitations in English, Plaintiff has repeatedly requested sign language interpreters from his supervisors and managers at Sikorsky, as well as from human resources. (*Id.* at 252:15-273:21.) While Defendant has recently occasionally provided interpreters for company-wide "All Hands" meetings, and at least one training, Defendant has refused and/or failed to provide interpreters for most departmental meetings, and has never provided interpreters for daily "muster" meetings. (*Id.* at 209:7-21, 211:5-14:21; *see also* Ex. 7 (Brant Depo.) to Pl.'s Opp'n. at 28:13-19 (Sikorsky's way of accommodating Plaintiff was through a "standing policy" of providing interpreters for meetings of 50 to 200 people, such as All Hands meetings); *id.* at 27:19-28:17 (Defendant "believes" interpreters are "not required" for meetings involving less than 50 people).)

According to Defendant, for "anything that's beyond the job" Plaintiff "has the ability to meet one on-one to give him a good work environment" (*id.* at 75:18-76:8), and that all meetings can be "done one-on-one" after the fact (*id.* at 79:12-13). Defendant came up with a list of "suggestions and actions" to address Plaintiff's concerns, none of which involved providing an interpreter. (Ex. 8 (Lawrence Depo.) to Pl.'s Opp'n at 43:25-44:24.) Defendant instead provided other "modifications" (such as text-to-speech software, written materials, or meeting with Mr. Cadoret one-on-one after group meetings had occurred). (*See* LR 56 ¶¶ 67–73.)[2] Since mid-to-late

---

[2] Plaintiff asserts these modifications were inconsistent and ineffective. For instance, with respect to the follow-up one-on-one meetings, he testified that "they had to come to me at the end,

3

May 2017—long after this lawsuit was filed—Defendant has finally made interpreting services available to Mr. Cadoret via a Video Remote Interpreting service ("VRI"). (Ex. 10 (Plaintiff's Declaration) to Pl.'s Opp'n [Doc. # 56-10] ¶ 2.) However, Defendant's employees do not always utilize this system, and when they do, they often do so incorrectly, leaving Plaintiff without communication access. (*Id.*)

Plaintiff is embarrassed by not being able to communicate in the workplace, and frustrated by Defendant's long delays and general failure to respond to his requests for accommodation. (*See* Brant Depo. at 31:13-32:23; Warren Depo. at 42:18-20, 53:22-54:8.) Plaintiff testified that he "got angry" and "got very depressed the last few years." (Pl.'s Depo. at 330:8-11.) Defendant's failure to accommodate Mr. Cadoret has caused him to feel limited in the workplace and has deterred him from seeking new responsibilities and opportunities for advancement. (*See id.* at 190:12-18; Pl.'s Declaration ¶ 3.)

## II. Discussion[3]

---

you know. They didn't have enough time to talk to me. And it was very confusing for me because I was not there, I didn't get the feedback." (Pl.'s Depo. at 145-47.) The written materials, he stated, were provided only for a short time and then "faded away." (*Id.* at 285-86.) Additionally, Defendant never inquired as to Plaintiff's reading level, and instead simply assumed he could read all of the materials. (Lawrence Depo. at 57:23-58:9.) And, the early attempts at text-to-speech programs were unsuccessful. (LR 56 ¶¶ 70-71.)

[3] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

The ADA and the Rehabilitation Act require employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." *McBride v. BIC Consumer Mfg. Co. Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (citing 42 U.S.C. § 12112(b)(5)(A)). "A reasonable accommodation is one that 'enable[s] an individual with a disability who is qualified to perform the essential functions of that position … [or] to enjoy equal benefits and privileges of employment.'" *Noll v. Int'l Business Mach. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (citing 29 C.F.R. § 1630.2(o)(1)(ii), (iii)). Whether an accommodation is reasonable is a "fact-specific" question that often must be resolved by a factfinder. *Id.* However, if an "employer has already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is plainly reasonable." *Id.* (internal citations and quotation marks omitted).

Defendant argues summary judgment is appropriate on Plaintiff's failure to accommodate claim because: 1) Plaintiff does not need an interpreter to perform the essential functions of his job, 2) Plaintiff failed to properly exhaust his claim that he was denied equal access to benefits and privileges of employment, 3) Plaintiff's request for a full-time ASL interpreter is unreasonable as a matter of law, and 4) in 2017 Defendant made available a Video Remote Interpreting ("VRI") package giving Plaintiff access to on-demand video remote interpreters throughout his shift so there is no basis for hiring an interpreter.[4] These arguments are without merit.

---

judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

[4] Defendant does not contend it would suffer an undue hardship if required to provide the interpreter. It also conceded at oral argument that it receives "federal financial assistance," as

## A. Plaintiff Admits he can Perform the Essential Functions of his Job but Seeks Equal Access to Meetings and Trainings

Plaintiff is not arguing that he is unable to perform the essential functions of his job, and concedes he can perform them without accommodation. (Pl.'s LR ¶ 82.) Instead, and as discussed in more detail below, Plaintiff seeks access to equal benefits and privileges of his employment with Defendant, and specifically, an interpreter, so that he can participate in workplace functions including meetings and trainings, and to enable him to converse with supervisors and management. (Pl.'s Opp'n at 8.)

Defendant never argues such claim is not cognizable.[5] Under Title I of the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, *job training, and other terms, conditions, and privileges of employment.*" 42 U.S.C. § 12112 (emphasis added). The federal regulations promulgated by the EEOC further state that "[t]he term reasonable accommodation means . . . [m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities. 29 C.F.R. § 1630.2(o)(1)(iii).

---

required under Section 504 of the Rehab Act, *see* 29 U.S.C. § 794(a), and is no longer disputing that fact.

[5] In fact, Defendant's own Motion cites *Noll*, which as articulated above, specifically states that "a reasonable accommodation is one that 'enable[s] an individual with a disability who is qualified to perform the essential functions of that position . . . [or] to enjoy equal benefits and privileges of employment.'" (Def.'s Mot. for Summary Judgment at 20 (citing *Noll*, 787 F.3d at 94.)

Additionally, the Ninth Circuit in *U.S. EEOC v. UPS Supply Chain Solutions* addressed a similar fact pattern in which a deaf individual alleged he was denied the benefits and privileges of employment, including participation in meetings and job trainings. 620 F.3d 1103, 1105-06 (9th Cir. 2010).[6] The plaintiff's job involved attending both weekly and monthly department meetings, for which he had repeatedly requested an ASL interpreter. *Id.* at 1106–07. Instead of providing an interpreter, UPS assigned a co-worker to take notes (in English) during the meetings for the plaintiff, but both the plaintiff and the co-worker found this situation to be difficult and ineffective in the interactive context of a meeting. *Id.* The Ninth Circuit held that "there [was] a genuine issue of material fact regarding whether these modifications, viewed as a whole, would allow a deaf employee, even one who was fluent in written English, to enjoy the benefits and privileges of attending and participating in the departmental meetings," especially where, as here, the plaintiff has only "limited proficiency in written English." *Id.* at 1112.

Defendant does not identify any facts establishing that Plaintiff does not require an ASL interpreter to participate in meetings and trainings. On the other hand, Plaintiff points to facts in the record which support the proposition that he does need an interpreter to participate. For instance, he quotes his expert in neurolinguistics and sign language, Dr. Shepard-Kegl, who summarized that Plaintiff is

> a reasonably good lipreader one-on-one in well-lit and quiet settings, but cannot rely upon lipreading in the noisy environment he encounters in his workplace when interacting with peers and the people he was supervising. . . . His speech is fluctuating in intelligibility and when intelligible has many deaf speech characteristics that may make comprehension [difficult] for individuals less

---

[6] The Court there was aided by the fact that the parties agreed "[t]he dispute center[ed] on whether UPS provided Centeno with reasonable accommodations for certain benefits and privileges of employment that did not affect his ability to complete his job duties." *Id.* at 1106.

7

familiar with deaf speech. It also come[s] across as somewhat juvenilized (rife with speech errors) that could not allow him to present himself as the mature adult he is when using ASL.

(Shepard-Kegl Report at 81.)

Plaintiff further contends that the departmental meetings and, crucially, the daily muster meetings, require extensive verbal communication between multiple interlocutors in an interactive question-and-answer format. (Pl.'s LR 56 ¶¶ 54, 60-61 (Sikorsky's corporate representative testified that musters are "important" and "a necessary intangible to build a helicopter and run a final assembly line" because "the supervisor needs to be able to communicate with his crew as a group or individually through a muster to make it personal" and that musters "wouldn't be as effective" if done via writing.).) Here, Plaintiff has testified that he could not participate in the meetings, and that Sikorsky supervisors did not even consistently provide him with written materials during or after the meetings. (*Id.* ¶¶ 63, 67–68.)

Despite the fact that Plaintiff concedes he can perform the essential functions of his job, there is a triable issue of fact with respect to whether Plaintiff required an ASL interpreter to access meetings and trainings in the workplace in order to receive equal benefits and privileges of employment.

### B. Plaintiff Sufficiently Exhausted his ADA Claim

Defendant asserts for the first time in its Reply Brief that Plaintiff failed to include his "new legal theory" of being denied access to equal benefits and privileges of employment in his EEOC charge and thus failed to exhaust his administrative remedies.[7] (Def.'s Reply at 5.) "Before an

---

[7] Defendant claims it only raised the argument in its Reply in order to respond to Plaintiff's clarification in his Opposition that his claim focused on access to equal benefits and privileges of employment, and not the traditional failure to provide accommodations to enable an individual to

8

individual may file a complaint in federal court bringing claims pursuant to . . . the ADA, he must exhaust his administrative remedies by timely filing a complaint with the EEOC."[8] *Ceslik v. Miller Ford, Inc.*, 584 F. Supp. 2d 433, 441 (D. Conn. 2008). Failure to include a claim "reasonably related" to those alleged in the EEOC complaint, however, will not preclude federal jurisdiction over that claim. *Stewart v. U.S. INS.*, 762 F.2d 193, 198 (2d Cir. 1985). "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.' " *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir.2006) (quoting *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir.2003)). A claim is "reasonably related" if it would reasonably be included in the expected scope of the EEOC's investigation, arises from retaliation based on the plaintiff's filing with the EEOC, or "alleges further incidents of discrimination carried out in

---

perform the essential functions of his or her job. However, Plaintiff's Complaint alleges "Defendant discriminated against Plaintiff on the basis of his disability by discriminating against him in regard to the terms, conditions, and privileges of employment in violation of 42 U.S.C. § 12112(a)." (Pl.'s Compl. [Doc. # 1] ¶ 49.) There is no apparent reason Defendant could not have made this argument in its Motion and thus it should be deemed waived because it was raised for the first time in Defendant's Reply Brief. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *see also Corpes v. Walsh Constr. Co.*, 130 F. Supp. 3d 638, 644 (D. Conn. 2015) ("Because raising new arguments for the first time in a reply brief is improper, the Court will not consider these issues." (citations omitted)). Nonetheless, the Court also finds Plaintiff has adequately exhausted his claim, as discussed *infra*.

[8] This is relevant only for Plaintiff's ADA claim, as exhaustion is not required under Section 504 of the Rehab Act. *See Worthington v. City of New Haven*, No. 3:94-CV-00609(EBB), 1999 WL 958627, at *7 (D. Conn. Oct. 5, 1999) (the remedial provisions applicable to Section 504 "do not require exhaustion in Section 504 suits brought against a non-federal entity."); *Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp. 3d 378, 388 n.5 (E.D.N.Y. 2016) ("exhaustion is not necessary when non-federal employees bring claims under the Rehabilitation Act" (citing *Finley v. Giacobbe*, 827 F. Supp. 215, 219 n.3 (S.D.N.Y. 1993); *Lee v. City of Syracuse*, No. 03-CV-1329, 2005 U.S. Dist. LEXIS 48023, at *5 n.4 (N.D.N.Y. Feb. 15, 2005); and *Worthington*, 1999 WL 958627, at *7)).

precisely the same manner alleged in the EEOC charge." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir.2002).

In Mr. Cadoret's EEOC charge he alleged that throughout his

> employment [he] made repeated requests for an American Sign Language interpreter to facilitate effective communication and [was] denied this auxiliary aid and service. In July of 2013 as well as on other occasions, [he] made a request for a Sign Language interpreter because [he] need[s] one to effectively communicate to Jim Brant, Manufacturing Manager who again refused this accommodation.

(Ex. H (EEOC Charge) to Def.'s Mot. for Summary Judgment.)[9] The parties agree that the EEOC's decision does not expressly couch the failure to accommodate claim as a denial of equal benefits and privileges of employment.

Defendant reasons that because the EEOC decision "makes no mention of . . . Plaintiff's right to enjoy equal benefits and privileges of employment," the issue was not before it. According to Defendant, one would expect that where the EEOC promulgated these very regulations and regularly pursues claims based on denials of equal benefits and privileges, it would have discussed this issue if it believed the charge presented it. (Def.'s Reply at 7.) The EEOC decision reflects its determination that Defendant had provided other effective accommodations in lieu of a full-time interpreter and therefore did not discriminate against Plaintiff. The decision also specifically stated that "[n]o finding is made as to any other issue that might be construed as having been raised by this charge," recognizing the possibility that Plaintiff's charge might be read to include other issues

---

[9] Defendant also claims that Plaintiff's initial charge was specific to a request for a *full-time* interpreter. Thus, Defendant suggests Plaintiff cannot now make what Defendant views as a different claim for something less than a full-time interpreter. Even if Plaintiff did request a full-time interpreter in his EEOC Charge (despite there being no language to that effect), this would be a difference in degree, not kind, and the Charge would still have put Defendant and the EEOC on notice of Plaintiff's claim.

not addressed by the EEOC in its decision. (Ex. M (EEOC Decision) to Def.'s Mot. for Summary Judgment.)

In addition, Defendant cites *Howard v. UPS*, which it contends "closely resembles" the fact pattern in this case. 101 F. Supp. 3d 343, 347 (S.D.N.Y. 2015), *aff'd sub nom. Howard v. United Parcel Serv.*, 648 F. App'x 38 (2d Cir. 2016). However, in *Howard*, the plaintiff's administrative charge alleged, in relevant part: "[i]n 2010 … I signed up for the required five Training Program given by Respondent and requested an accommodation of an interpreter. My request was denied." (*See* Ex. E (*Howard* Charge) to Def.'s Reply [Doc. # 58-6].) Plaintiff alleged that the absence of an ASL interpreter for the training resulted in his failure to pass the course. *Howard*, 101 F. Supp. 3d at 355. There were no allegations regarding other circumstances requiring an interpreter. (*See Howard* Charge.) The plaintiff was unsuccessful in efforts to convince the district court that his claim actually centered on his right to equal privileges of employment because he had been denied interpreters for various safety trainings, pre-shift and large meetings, and other "important work related functions" such that this claim was covered by his EEOC charge.[10] (*See* Ex. F (*Howard* Brief) to Def.'s Reply [Doc. # 58-7] at 1, 8, 10-11, 18.) The court granted summary judgment on the plaintiff's failure to accommodate claim, concluding that UPS had indeed provided him with

---

[10] In a footnote, the district court observed that the record was devoid of specific dates and circumstances supporting the plaintiff's "vague generalized assertion [in his civil complaint] that he was 'denied privileged and benefits of employment.'" *Howard*, 101 F. Supp. 3d at 353 n.5. The defendant argued that those "general allegations" were not included in the plaintiff's EEOC complaint and therefore that he failed to exhaust his available administrative remedies. *Id.* at 353 n.6. The court rejected plaintiff's argument that the general allegations should be considered because they were of the same "nature" as the issue regarding being denied an interpreter for the training course. *Id.* The Second Circuit did not discuss the exhaustion argument, simply affirming the district court's grant of summary judgment "for substantially . . . the reasons given by the district court in its amended opinion and order." *Howard*, 648 F. App'x at 40.

reasonable accommodations as a matter of law, such as modifying the classroom experience and allowing him additional time to take the written examination. *Howard,* 101 F. Supp. 3d at 355-56.[11]

In contrast with the administrative charge in *Howard,* which covered specifically and exclusively a single instance of a denial of an interpreter for a training session, Mr. Cadoret has broadly alleged he made "repeated requests . . . to facilitate effective communication" which were denied. (EEOC Charge.)[12] Plaintiff is not required to articulate every potential legal theory which could arise from the allegations in his EEOC Charge, so long as his claim is "reasonably related" to those alleged in the EEOC complaint. *See Stewart v. U.S. INS.,* 762 F.2d 193, 198 (2d Cir. 1985). The Court concludes that the facts in Plaintiff's EEOC Charge were sufficient to put the EEOC on notice of a discrimination claim which encompassed denial of equal benefits and privileges of employment. Accordingly, Plaintiff adequately exhausted his administrative remedies, and this case will not be dismissed for lack of jurisdiction.

---

[11] The district court also emphasized the factual context of the case, noting that the "modifications were reasonable in light of the requirement of the full-time driver position, in which plaintiff would be expected to be able to communicate effectively with customers, the public, and law enforcement without the aid of an ASL interpreter." *Id.* at 356.

[12] Plaintiff's EEOC Charge alleged he was discriminated on the basis of his disability because he was denied repeated requests for an interpreter. The operative provision of the ADA specifically prohibits discrimination on the basis of disability in regard to "job, training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. The Regulations provide that a reasonable accommodation includes one that enables an employee to "enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii). The broad facts Plaintiff included in his Charge could encompass several potential theories of discrimination, and the fact that the EEOC focused on one and not another does not demonstrate that Plaintiff's claim was not exhausted.

### C. Defendant Fails to Establish That Plaintiff's Request is Unreasonable as a Matter of Law

Defendant claims that Plaintiff's request necessarily requires hiring another full-time employee, and that this request is therefore unreasonable as a matter of law. However, the cases Defendant cites for this proposition do not support its position. Even if Plaintiff were requesting a full-time interpreter,[13] there is no binding authority holding that such an accommodation is *per se* unreasonable, and Defendant has not pointed to any facts mandating the conclusion that a full-time interpreter is unreasonable in this particular case.

Defendant points to cases rejecting employees' requests for accommodation in the form of hiring another employees in order to help the plaintiff employee perform his or her job. (*See* Def.'s Mot. to Dismiss at 22-23 (citing cases).) For instance, in *Fiorillo v. United Technologies Corporation* the plaintiff employee complained that she was overworked and requested as accommodation that Sikorsky hire or assign additional employees to reduce her workload. No. 3:13-CV-1287 (VLB), 2016 WL 1118789, at *15 (D. Conn. Mar. 21, 2016). Similarly, in *Hunt-Watts v. Nassau Health Care Corporation* the plaintiff podiatrist requested that the defendant hire a nurse to perform some of her job duties. 43 F. Supp. 3d 119, 133-34 (E.D.N.Y. 2014).

In both of these cases, as well as the others Defendant cites, the courts found that hiring an additional employee did not constitute a reasonable accommodation. However, none of these cases

---

[13] The parties dispute whether in fact Plaintiff is requesting a full-time interpreter. Defendant maintains that in order to accommodate Plaintiff's desire to have interpreters at "group meetings, important meetings with supervisors or management, and trainings," it would be required to hire someone full-time. (Pl.'s Sur-Reply at 15.) Whether Plaintiff's request, in effect, requires a full-time interpreter is not dispositive because even a full-time interpreter may not be an unreasonable request as a matter of law, as shown in the discussion above.

involved an employee's request for an interpreter. Instead, they are all based on "the principle that under no circumstances can a reasonable accommodation involve the elimination of an essential job function." *Hunt-Watts*, 43 F. Supp. 3d at 133; *see also Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991) ("'reasonable accommodation'" does not mean elimination of any of the job's essential functions").

On the other hand, Plaintiff calls the Court's attention to *Searls v. Johns Hopkins Hospital*, in which the plaintiff, a deaf nurse, requested a full time interpreter. 158 F. Supp. 3d 427, 431 (D. Md. 2016). The court found that her "accommodation request would not have reallocated the essential job functions of communicating with others and responding to alarms" and that a full-time interpreter was a reasonable accommodation. *Id.* at 437. Here, there is no question that Plaintiff can indeed perform the essential functions of his job, and his request for an interpreter would not involve the elimination of any of his job's essential functions.

Indeed, the language of the ADA itself identifies interpreters as a potentially reasonable accommodation. *See* 42 U.S.C. § 12103(1)(A) (defining "auxiliary aids and services" to include "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments"); 42 U.S.C. § 12111(9)(B) ("the term 'reasonable accommodation' may include . . . the provision of qualified . . . interpreters"). Additionally, the Second Circuit found that "although ASL interpretive services may not always constitute a reasonable accommodation . . . according to the regulations, interpreters are a common form of reasonable accommodation." *Noll*, 787 F.3d at 96–97.[14] The Second Circuit went on to note that

---

[14] In *Noll*, the employer had provided the deaf employee with access to ASL interpreters as an accommodation, which the Court found was an effective, and thus reasonable, accommodation, despite not being what the plaintiff had requested.

14

> Circumstances can be conceived in which the provision of interpreters would be less obviously reasonable, or even plainly *unreasonable,* as when technical material cannot be fully and accurately communicated by ASL. . . . And not every person who is deaf or hard of hearing is able to understand ASL. Logistical constraints arising out of the job itself might also make ASL interpretation infeasible or unwieldy. But a record would be required to document such extraordinary circumstances.

*Id.* at 97 (internal citations omitted) (emphasis in original). However, Defendant has not identified any facts on this record which support finding "extraordinary circumstances" that would render the hiring of an ASL interpreter unreasonable such that summary judgment would be appropriate.

### D. Defendant's VRI Accommodation

Defendant began providing VRI services for Plaintiff's benefit in 2017, which it contends was a reasonable accommodation and thus that it is not required to provide Plaintiff with an interpreter. This argument can be summarily disposed of because this accommodation was not made available to Plaintiff until at least April or May of 2017, while Plaintiff's Complaint, filed in September, 2015, relates to conduct which occurred long before the provision of the VRI services. (*See* LR 56 ¶¶ 79-80.) Thus, while relevant to Plaintiff's request for injunctive relief, the VRI accommodation has no impact on whether Plaintiff might recover damages for the period prior to its availability covered in his EEOC charge. *See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608-09 (2001) ("[S]o long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case. Even then, it . . . is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." (internal quotation and citation

omitted)). Accordingly, Defendant's recent provision of VRI services does not preclude Plaintiff's claim for damages for failure to accommodate and for future injunctive relief.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 9th day of February 2018.